Stickney *v.* Munroe.

ROBERT STICKNEY ET AL. *versus* EDMUND MUNROE.

Where one without right has diverted water from the mill of another so as to diminish its power of performance to the extent of its capacity, he will be liable in damages therefor, and he cannot excuse himself by the fact that the owner of the mill has, by entirely independent acts, caused a loss to himself.

Although the principal is held liable to third parties in a civil suit for frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and omissions of duty in his agent, *in the course of his employment*, where the principal did not authorize, justify or participate in such misconduct, or if he had no knowledge of, or, knowing, disapproved and forbade it; yet, where an agency was limited to the business of keeping mills in repair, leasing the same, and receiving rents therefor, he is not liable for the acts of a lessee of a mill in excavating the bed of the river, thereby causing damage to a neighboring mill owner.

This is an action ON THE CASE, for diverting water from the plaintiff's mill.

EXCEPTIONS were filed to the rulings of HATHAWAY, J., and the whole evidence is by him reported upon a motion for a new trial.

The plaintiffs' attorney requested the following instructions: ·

1st. That if Lowell, the agent, was permitted by Munroe to take, and continue for a series of years the general management of his mill property at Calais, third persons would have the right to regard him as general agent for that purpose, and to hold the principal responsible for the acts of such agent to the extent of such permission, and would not be affected by a power of attorney limiting his authority without notice.

2d. That the receipt of rent and omission to terminate the tenancy of Tinker, if he had an opportunity to expel him for breach of condition in his lease, would be a ratification of his previous act in making alterations in the property he occupied.

The defendant's attorney requested the following instructions:

1st. That the plaintiffs cannot recover for any alleged damage on account of the defendant drawing water from the stream to supply his mill, if the jury find there was sufficient water for all the mills.

2d. That the plaintiffs cannot recover for any deficiency of water occasioned by the defendant or his agent or lessee drawing water, unless they have evidence and are satisfied that he has notified the plaintiffs of such deficiency, and requested him to lessen his rents.

3d. That this action cannot be maintained, provided the jury are satisfied that the plaintiffs by their acts or the acts of their agent, servant, or person in their employment contributed in any degree towards the injury they allege in their declaration, they have sustained.

4th. That the defendant is not by law liable for the dig-

Stickney *v.* Munroe.

ging or excavating alleged to have been done, unless they are satisfied that the defendant did it himself or commanded it to be done; or having previous knowledge of it, ratified and adopted it, claiming the benefit of it.

5th. That if the jury believe all the evidence of the case, the defendant is not liable, and this action cannot be maintained.

Of the instructions requested by the plaintiffs' attorney, the first was given and the second refused. And of those requested by the defendant's attorney, the first and fourth were given and the others refused.

The words in Sherman's deposition, " I should think there would be 200 M. to a saw difference in a season," was objected to by the defendant's counsel, and ruled in.

The presiding judge instructed the jury that as the plaintiffs derived their title to the shore saw of the Washington mill, as appears by the deed they have put into the case, from the defendant, with the right to draw the same quantity of water used by said shore saw at the date of the grant, together with a lath machine, and additional water for an edging machine; the defendant had no right to make or authorize his tenant to make, any change in his mill whereby additional water would be drawn to the detriment of the mill he had conveyed to the plaintiffs. And if the jury found the changes made in the Madison mill authorized by the defendant, contributed to lessen the quantity of water running to the plaintiff's mill purchased of the defendant, at the date of their purchase, whereby any damage was sustained by them, the defendant would be liable for such damage in such action. And also instructed the jury that if the defendant commanded or authorized his tenant, Tinker, to do the blasting and digging which it is alleged diverts the water from the plaintiffs' shore saw mill, or ratified and approved of such acts after they were done, and they did, in fact, divert the water and occasion a damage to the plaintiffs' said mill, he would be liable for such damage; but if he had no knowledge of such acts, and did not command or authorize them, nor ratify

or adopt them, and had no actual knowledge of them, he would not be liable for this injury, nor would Lowell's power of attorney, put into the case, nor his general agency in relation to the defendant's mill property, if the jury are satisfied that such general agency is proved, authorize Mr. Lowell to dig or excavate the bed of the river so as to divert the water, nor authorize him to bind the defendant by giving Tinker liberty to do so. And that the permission by Lowell to dig and excavate, if they find there was any such permission, and the receipt of rent for the mill, by the defendant after the blasting and digging, and the re-letting one of the saws in the Madison mill to Tinker, by Lowell, after the blasting and digging, and the receipt of rent therefor by the defendant, would have no tendency to prove such actual knowledge on the part of the defendant, as was necessary, in order to render him liable, either for the original blasting and digging by Tinker, or for the continuance of the injury, if there was an injury done by him, and put to the jury the following questions:

1. Did the defendant authorize or ratify the digging and blasting and deepening of the channel done by Ferdinand Tinker?

2. What amount of damage was done to the plaintiffs' shore saw mill, by reason of the digging and blasting of the rocks, and deepening the channel by said Tinker?

And directed the jury if they should find for the plaintiffs, to find only such damages as the plaintiffs had suffered from the increased draft of water in the Madison mill, by change of the machinery made by Tinker, unless the defendant commanded and authorized the said blasting and digging, or ratified or approved it, or had actual knowledge of it.

The jury found a verdict for the plaintiffs, and assessed damages at two hundred and twenty-five dollars, and answered the first question in the negative; and in answer to the second question said, seven hundred dollars to the date of the writ.

*Harvey* and *Pike,* counsel for the plaintiffs.

*Downs & Cooper,* and *Granger,* counsel for the defendant.

TENNEY, C. J.   This suit was instituted to recover damage alleged to have been caused to the plaintiffs' mill, called the shore saw of the Washington, situate on the Schoodic river in the town of Calais, by the defendant, in altering and enlarging the water gates in and under a certain other mill, called the Madison, situate on the same river and upon the same dam, and in opening and keeping open the same gates and conduits, and passage-ways leading therefrom, without lawful authority.

The plaintiffs, as evidence of their title to the premises alleged to have been injured by the acts of the defendant, introduced a deed from the defendant to them, of the shore saw of the Washington mill, dated June 9, 1851, specifying the estate, including the water power and privileges, intended to be conveyed, with the right of making certain alterations in the gear and machinery in the said mill.   They also introduced a deed from John McAdam to them, dated September 13, 1843, of the stream saw of the same mill, with certain real estate and privileges.

The defendant introduced in evidence a power of attorney from himself to Levi L. Lowell, authorizing him to give leases of any real estate owned by the defendant in the county of Washington, dated February 28, 1833, and a lease of the shore saw of the Madison mill, to Ferdinand Tinker, executed in the name of the defendant, by his said attorney, dated January 1, 1852, for the term of five years, with an agreement upon the back thereof to extend the same after the determination of the lease, if thereto requested by the lessee.

Evidence was introduced upon both sides touching the injury to the plaintiffs, alleged in the writ; and the jury returned a verdict for the plaintiffs for the damages occasioned by the enlarging of the gates, &c., in the Madison mill, under certain rulings, instructions and refusals to instruct.   The defendant filed a motion to set aside the ver-

dict, as being against the evidence in the case; and it was agreed by the parties, that if upon the whole evidence, the action is not maintainable; or if the rulings, instructions, and refusals to instruct were erroneous, to the prejudice of the defendant, the verdict is to be set aside, &c.; otherwise the verdict is to stand, unless the defendant's motion shall prevail.

Some of the instructions requested in behalf of the defendant, and not given, do not seem to be relied upon in the argument, and they will be noticed only by the remark, that their refusal is not regarded as erroneous.

One of the instructions requested by the defendant's counsel, and refused, was, that this action cannot be maintained, provided the jury are satisfied that the plaintiffs, by their acts, or the acts of their agents or servants, or persons in their employment, contributed in any degree towards the injury they allege in their declaration, they have sustained. In support of this proposition it was insisted for the defendant, that after certain alterations in the wheels and machinery in the plaintiffs' mill, more water was required for their operation than was previously necessary. Whether it was so or not, was a question in dispute, and upon the hypothesis that the jury found the affirmative, is it true in law, that if this change added to the injury of the plaintiffs *in any degree*, the defendant could increase the size of his gates and conduits to an extent which might be ruinous to the plaintiffs, with impunity? It is true, that the plaintiffs cannot recover for a loss which they have sustained by an alteration caused by them, which requires more water to propel their machinery than was previously found necessary. But if it is shown to the satisfaction of a jury that the defendant has, without right, diminished the power of the plaintiffs' mill, so as to prevent it from doing the business which it had capacity for doing, without this unlawful interference, it cannot be doubted that he must answer in damages. And the court cannot assume that in such a case it is impossible for the jury to determine under evidence adduced, the amount of

injury sustained by the plaintiffs, by the unauthorized changes made by the defendant. A jury may not be able to draw the line with the greatest accuracy, so that they can know what loss the plaintiffs have sustained by their own alterations, and those of the defendant. But still they may be able to find, that the changes made by the latter have been certainly productive of a certain loss, at least to the former, and for the amount of that loss they may properly return a verdict.

The cases cited by the defendant, upon this point, are those where accidents had happened by collision of vessels upon the sea, or carriages upon the highways, caused by the parties in litigation, when both were guilty of negligence. The case before us has little or no analogy to those referred to. The plaintiffs had certain rights to the water, under the deed from the defendant, and if his acts deprived them of the benefits to which they were entitled by that deed, he cannot justify or excuse his wrongful acts, so far as they have produced damage, by showing that the plaintiffs have caused a loss to themselves, by changes in their wheels and machinery, entirely independent of those acts of his.

The judge instructed the jury, that as the plaintiffs derived their title to the shore saw of the Washington mill, from the defendant, with the right to draw the same quantity of water used by said shore saw, at the date of the grant, together with a lath machine, and additional water for an edging machine, the defendant had no right to make, or authorize his tenant to make, any change in his mill, whereby additional water would be drawn to the detriment of the mill he had conveyed to the plaintiffs; and if the jury should find the changes made in the Madison mill, authorized by the defendant, contributed to lessen the quantity of water running to the plaintiffs' mill, purchased of the defendant, at the date of their purchase, whereby any damage was sustained by them, the defendant would be liable for such damage in such action. In some respects these instructions were the converse of those requested by the defendant, and refused, and the

reasons for their refusal will equally support those which were given. The latter were clear and simple, and could not have been misunderstood, however complex and involved the evidence to which they were to be applied. It is so obvious, that they were correct as abstract rules of law, that their propriety cannot be rendered more clear by argument.

The judge was requested to instruct the jury, that if they believed all the evidence of the case, the defendant is not liable. This was not given. The instructions upon this branch of the case were correct, and those requested were given, or properly withheld, before the one now in question was refused. This having been done, it was no part of the judge's duty to pass upon the evidence and pronounce its insufficiency. If the plaintiffs had introduced no evidence tending to maintain the issue on their part, the judge could have directed a nonsuit, but no exceptions lie to his omission to do this. The request was in effect to do the same, after all the evidence on both sides was before the jury.

The evidence at the trial consisted of deeds and other documents, together with the testimony of numerous witnesses on the stand and in depositions. This testimony, in some respects, was opinions of those experienced in matters appertaining to the questions in controversy. These opinions were not in perfect harmony one with another. The jury passed upon the facts before them, and nothing is perceived in the report of the case, indicating a misapprehension of the evidence by them, or that they were under improper influences. The motion cannot be sustained.

It is alleged in the writ, that the defendant dug up and removed the rocks and earth from the natural bed of the Schoodic river, to a great depth, and by digging up and removing the bank and bed of the river as aforesaid, and by using the new and enlarged water gates as aforesaid, did divert the water of the river from the usual and natural course, &c., to the great nuisance and damage of the plaintiffs.

The jury were instructed upon this part of the case, that if the defendant commanded or authorized his tenant, Tink-

er, to do the blasting and digging, which it is alleged diverts the water from the plaintiffs' shore saw mill, or ratified and approved of such acts, after they were done, and they did in fact divert the water, and occasion a damage to the plaintiffs' said mill, he would be liable for such damage; but if he had no knowledge of such acts, and did not command or authorize them, nor ratify or adopt them, and had no actual knowledge of them, he would not be liable for this injury; nor could Lowell's power of attorney, put into the case, nor his general agency in relation to the defendant's mill property, if the jury are satisfied that such general agency is proved, authorize Lowell to dig or excavate the bed of the river, so as to divert the water, nor authorize him to bind the defendant, by giving Tinker liberty to do so.

Special inquiries were put to the jury: First, did the defendant authorize or ratify the digging and blasting and deepening of the channel done by Ferdinand Tinker; and, second, what amount of damage was done to the shore saw mill of the plaintiffs, by reason of the digging and blasting of the rocks and deepening of the channel by Ferdinand Tinker? To the first question, the jury answered in the negative; and to the second, the sum of seven hundred dollars, to the date of the writ.

The parties agreed, that the whole verdict is to be copied as part of the case, including the special findings in answer to the questions proposed, and if the verdict for the plaintiffs is not set aside, on account of errors of the judge, or under the motion, judgment is to be entered according to the legal rights of the parties. From this we understand that the whole evidence is submitted to the court, and if from that, it is satisfied that the defendant is answerable for the excavations made in the bed of the river, the damage found for that cause is to be added to the verdict returned, and judgment to be rendered thereon.

The acts of a general agent, or one whom a man puts in his place to transact all his business of a particular kind or a particular place, will bind his principal, so long as he

keeps within the scope of his authority, though he may act contrary to his private instructions; and the rule is necessary to prevent fraud, and encourage confidence in dealing. 2 Kent's Com., 5th edition, 620; *Lobdell* v. *Bahn*, 1 Met. R., 202; Story on Agency, s. 126, and note (1).

"The principal is held liable to third persons, in a civil suit for frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances and omissions of duty in his agent, *in the course of his employment,* although the principal did not authorize, justify, or participate in, or indeed know of such misconduct; or even if he forbade them or disapproved of them." "In every such case, the principal holds out his agent as competent and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters of his agency." Story's Agency, s. 452. And as an illustration of the principle, a carrier will be liable for the negligence of his agent, by which the goods committed to his custody are damaged or lost. Ib., s. 453.

But although the principal is thus liable for torts and negligences of his agent, yet we are to understand the doctrine, with its just limitations, that the tort or negligence occurs *in the course of the agency.* For the principal is not liable for the torts and negligences of his agent in any matter, *beyond the agency,* unless he has expressly authorized them to be done, or he has subsequently adopted them for his own use and benefit. Ib., s. 466, also s. 455. The principal is not responsible for the injuries done by the person employed by him as an agent, *which he has not ordered and which were not in the course of the duty devolved upon such person.* In all such cases the proper remedy is against the immediate wrong doer, for his own misconduct. Ib., s. 319.

By the common law, "he that receiveth a trespasser, and agreeth to a trespass, after it is done, is no trespasser, unless the trespass was done to his use, or for his benefit, and then his agreement subsequent amounteth to a commandment; for in that case, *Omnis ratihabitio retrotrahitar et mandato as quissarator.*" Coke, 4 Inst., 317.

The evidence shows, that in the management of the mill property at Calais, in the building of one of the mills upon the dam, upon which the Washington and the Madison are situated, and in the repairs made upon the defendant's mills from time to time, and the supervision of their operations, and the receipt of rents therefor, in connection with the fact that the defendant had his residence in Boston, and was not personally at Calais for many years in succession, Lowell was at least held out to the world as the defendant's general agent, in the charge of the property aforesaid. But it is manifest that the scope of this agency was limited to the business of keeping the mills in a proper condition, leasing the same, and receiving the rents therefor. It does not appear, that previous to the excavations complained of in this action, he had undertaken to make such an alteration in the bed of the river, as to cause a diversion of the water of the same from the wheels of other mills, to the injury of the owners thereof, or that he had done any unlawful act under his agency, commanded before or ratified after it was done, by the defendant.

It is true, that Lowell is shown by the evidence to have authorized the defendant's lessee, Tinker, to have made alterations in the channel of the river, provided no injury should be done thereby to any one, and when informed by the plaintiffs of the excavations made by Tinker, and when he saw them, he made no objections to the further prosecution of the work. But at that time the lease to Tinker had four years and one half to run, and the lessee was entitled, on request, to have the same extended, and the defendant cannot be affected by these facts.

From a full view of all the evidence in the case, there is nothing showing that these excavations were made for the use and benefit of the defendant, and that they were done by Lowell, or authorized by him, in the execution of his agency, as he was held out by the defendant; and under the special findings of the jury, and the law applicable to the facts,

the defendant cannot be held liable for this portion of the injury alleged by the plaintiffs.

The portion of Sherman's deposition which was objected to, and allowed to be read, appertained entirely to the excavations made by the defendant's lessee in the bed of the river, and as the defendant is not liable therefor, the ruling becomes immaterial. But were it otherwise, the fair interpretation of the language is, the expression of an opinion by the deponent, as an expert, in a matter in which he had experience.

According to the agreement of the parties, judgment must be entered on the verdict.