## LADD VS. HILDEBRANT.

(1–4.) PRINCIPAL AND AGENT: *Unauthorized act by husband claiming to act as agent of wife.—Presumption of ratification from silence.*
(5.) ADVERSE POSSESSION *of land.*
(6.) WAIVER *of right to second trial in ejectment.*

1. In case of an unauthorized act performed by one claiming to act as agent, if there was no relation of agency in fact, the mere acquiescence or silence of the supposed principal is at least slighter evidence, or raises a slighter presumption, of a ratification, than it would in case of an actual agent who had exceeded his powers.
2. Whether, where an unauthorized contract is entered into by a husband in the name of his wife, the presumption of ratification from silence will be affected by the existence of the marital relation, is not here decided.
3. The ratification by the principal of the unauthorized contract of his agent, to be binding, must be made with full knowledge (or such means of knowledge as he was bound to use) concerning the facts, not only those relating to the nature of the contract, but those without a knowledge of which he could not repudiate it.
4. Where a husband, without authority, contracted for the sale of his wife's land, and delivered a deed thereof, which falsely purported to be executed and acknowledged by her, and she resided in another county than that where the land lay and where the deed was recorded, and several days' journey distant from the residence of the purchaser, and it is not shown that she knew the purchaser's name or post office address: *Held,* that it was not error for the court to refuse an instruction which assumed that her silence constituted a ratification, even if the question of such ratification could properly have been submitted to the jury upon such evidence.
5. Where one claiming land under a deed cleared away some brush and made some rails upon the land, but did not further use or occupy it for the next eleven years, this was not a possession adverse to the former owner within the meaning of the statute of limitations (sec. 6, ch. 138, R. S).
6. A party to an action may waive a future contingent right. Thus, in ejectment, a party, by stipulation before trial, may waive the right to a second trial which the statute would give him in case judgment in the first should be against him.

APPEAL from the Circuit Court for *Green* County. Ejectment, for a half-quarter section of land. The plaintiff owned the land in 1854; and in that year a deed thereof, purporting to be executed by her and by John L. Ladd, who was then her husband, was delivered to one Manchester; and by several intermediate

conveyances the possession and Manchester's title became vested in the defendant. The deed to Manchester was not executed in fact by *Mrs. Ladd*, but her name was signed thereto by a Mrs. West. The plaintiff was divorced from John L. Ladd in 1865, and soon after brought this action. The court submitted to the jury the following questions: 1. Whether, before the execution of said deed, plaintiff had executed and delivered to John L. Ladd a certain power of attorney, by which she authorized him, or any person he might appoint for that purpose, to sell and convey said land. 2. Whether the plaintiff, with full knowledge that Mrs. West had signed her name to said deed of conveyance, and had personated her in the execution and acknowledgment thereof, received and accepted as her own money, some considerable portion of the purchase money paid for the land by Manchester. And the court instructed the jury that in case either of these questions was determined in the affirmative, they should find a verdict for the defendant; otherwise, for the plaintiff.

The court refused the following instructions asked by defendant: 1. That if, at the time of the sale and conveyance to Manchester, the latter had no knowledge that the deed was not made by plaintiff in person, or by her consent or authority, but believed that it was so made; and if the plaintiff was soon after informed that the land had been sold to Manchester, and that her name had been signed to the deed for the purpose of consummating such sale and conveying her title to the land to him; and if no objection was made by plaintiff when so informed; and if, with this knowledge, she was silent for years before expressing any dissent or claiming the land—then her acts were a complete ratification of the sale and conveyance. 2. That if, soon after the deed to Manchester was executed and delivered, plaintiff was informed that the land had been sold to him, and that her name had been

signed to the deed for the purpose of consummating such sale and conveying her title to him, she was bound to repudiate the transaction without delay, and give notice to Manchester that she annulled the same and refused to ratify the deed; and that, failing to do this until the lapse of years, she was in law estopped from claiming the land. 3. That it was not necessary that plaintiff should have received any portion of the purchase money paid by Manchester, in order that she should be bound by the deed; but that if she had full knowledge that Mrs. West had signed her (plaintiff's) name to the deed, and had personated her in the execution and acknowledgment thereof, and that such deed had been delivered to Manchester as and for a sale of the land to him, for which he had paid a good consideration to John L. Ladd, then such deed was good to pass her title to Manchester, unless she refused to ratify the transaction, and gave Manchester notice of such refusal within a reasonable time after obtaining such knowledge. 4. That if, more than ten years before the commencement of this action, Manchester entered into possession of the land, claiming title thereto exclusive of any other right, under said deed, and he and his grantees had so continued in possession ever since, then the action was barred by the statute.

The jury answered in the negative both questions submitted to it by the court, and found a verdict for the plaintiff. A motion for a new trial, for lack of evidence and for erroneous instructions, was denied. Judgment having been entered upon the verdict, the defendant moved to vacate it and grant a new trial under the statute (ch. 141, R. S.); but the court denied the motion on the ground that the cause had once been continued upon defendant's stipulation that in case of such continuance he would waive his right to a new trial if the verdict were against him. The defendant appealed from the judgment.

*Conger & Sloan,* for appellant:

The ratification of a contract made by an unauthorized agent is equivalent to a preceding valid authority to make it. Story on Agency, §§ 445, 253; *Maclean v. Dunn,* 4 Bing. 722; *Wilson v. Tumman,* 6 Man. & Gr. 236; *Merrifield v. Parritt,* 11 Cush. 590. And if a party does not disavow the acts of his agent as soon as he can after they come to his knowledge, he makes them his own. 1 Parsons on Con. 46. The silence of the plaintiff for eleven years, after full knowledge of the sale and conveyance to Manchester, and of the fact that his grantees were in possession and making valuable improvements, is conclusive against her claim. *Wendell v. Van Rensselaer,* 1 Johns. Ch. 344; *Higinbotham v. Burnet,* 5 id. 184; *Storrs v. Barker,* 6 id. 166; *Town v. Needham,* 3 Paige, 545; *Tilton v. Nelson,* 27 Barb. 595; Story's Eq. §§ 385, 389; *Niven v. Belknap,* 2 Johns. 574, 589; *Thompson v. Blanchard,* 4 Coms. 309; *Brewster v. Baker,* 16 Barb. 613; *Cheeney v. Arnold,* 18 id. 434; *Berwick v. Dusenbury,* 32 How. 348. Counsel further contended that the action was barred by eleven years' adverse possession under the deed. R. S. ch. 138, secs. 6, 10. The operation of this statute is not saved by any exception in favor of married women (sec. 13), since coverture has ceased to create any disability in respect of maintaining an action respecting the married woman's separate property. *Holmes v. Carley,* 31 N. Y. 289; *Brown v. Cousens,* 51 Me. 301; *Slater v. Cave,* 3 Ohio St. 80.

*Geo. B. Smith* and *H. Medberry,* for respondent, to the point that a party is not estopped by his acts unless they are done with *knowledge* of the facts, cited *Wendell v. Van Rensselaer,* 1 Johns. Ch. 354: *Storrs v. Barker,* 6 id. 166, 168; *Town v. Needham,* 3 Paige, 545; *Jewett v. Miller,* 10 N. Y. 402. 2. The owner of land is not estopped from setting up his title by merely suffering his neighbor or a stranger to perform acts

of ownership over it. *Miller v. Platt*, 5 Duer, 272. 3. The statute of limitations does not apply to a married woman. R S. ch. 138, sec. 13, subd. 4.

DIXON, C. J. The jury have found (under an instruction which was unexceptionable to the defendant, in fact one which was asked by him, and given, and subsequently repeated and made more explicit in the charge of the court) that there was no power of attorney executed and delivered by the plaintiff to her husband before the execution and delivery of the deed by him to Manchester. There was irreconcilable conflict of testimony upon this point, and it is hard to believe that there was not falsehood and perjury on one side or the other. But the jury have settled the question upon a sufficiency of evidence, and their decision cannot be disturbed. The defendant does not seek to do so; and it must be taken as true, as found by the jury, that there was no previous authority from the plaintiff to her husband to execute the deed, or cause it to be executed in her name.

This fact, so found by the jury, has an important bearing upon the question we are to consider, namely: whether the plaintiff has ratified by her acquiescence, or is estopped by her silence from denying, the agency of her husband. Such is the question presented by the first, second and fourth instructions asked by the defendant and refused by the court, and to which exceptions were taken.

"Where an agency actually exists, the mere acquiescence of the principal may well give rise to the presumption of an intentional ratification of the act. The presumption may be far less strong, and the mere fact of acquiescence may be deemed far less cogent, where no such relation of agency exists at the time between the parties." Story on Agency, § 256. In this case, the jury having found that there was no agency, it belongs to the class where the presumption of ratifica-

tion by mere acquiescence is very much weakened, as stated by Judge STORY. But in the case of an unauthorized act done in the name of another by a mere stranger, it has been held that it will not be binding on him unless expressly ratified. It was so decided in *Wood v. Williams*, 26 Ill. 447. And this position is maintained by an English writer of very considerable eminence, who cites the authority of a great civilian in support of it. 1 Livermore on Agency, 50. Mr. LIVERMORE says: "When the relation of principal and agent does in fact exist, although in the particular transaction the agent has exceeded his authority, an intention to ratify will always be presumed from the silence of the principal, who has received a letter informing him what has been done on his account. But, where the person doing the business is a mere volunteer, who has officiously interfered in the affairs of another person, and has effected an insurance, or made a purchase for him, I do not conceive that the other person is bound to answer a letter from the intermeddler, informing him of the contracts so made in his name, nor that his silence can be construed into a ratification. Certainly no case has gone this length, and the opinion of the great Cujas is, that this is no ratification."

And in *White v. Langdon*, 30 Vt. 599, this doctrine was carried somewhat further. It was there held not to be the duty of a principal, who has given his agent merely a special and limited authority to sell property, upon learning that the agent has sold it in violation of his authority, to seek the purchaser, and give him notice of his claim; and his omission to do so, and his mere silence, are not ordinarily to be construed as a ratification of the sale. And much to the same effect is *Powell's Adm'r v. Henry*, 27 Ala. 612.

In the able and well considered opinion of the court, by WOODWARD, Justice, in *P., W. & B. Railroad Co. v. Cowell*, 28 Pa. St. R. 336, it is said: "I do not under-

stand counsel to mean that there can be no valid ratification unless one of the conditions specified—either prior agency or possession of the principal's property—has existed, but that silence after knowledge of the act done is evidence of ratification only in such cases. It must be admitted that the act of a mere stranger or volunteer is capable of ratification, for all the authorities are so; but the argument is, that the silence of the party to be affected, whatever the attending circumstances, cannot amount to ratification of the act of a stranger. \* \* \* \*

" If then, the principle of law be, that I can ratify that only which is done in my name, but when I have ratified whatever is done in my name I am bound for it as by the act of an authorized agent, it is apparent that my silence in view of what has been done is to be regarded simply as evidence of ratification, more or less expressive, according to the circumstances in which it occurs. It is not ratification of itself, but only evidence of it to go to the jury along with all the circumstances that stand in immediate connection with it. Among them, the prior relations of the parties are very important. If the party to be charged had been accustomed to contract through the agency of the individual assuming to act for him, or had intrusted property to his keeping, or if he were a child or a servant, partner or factor, the relation, *conjunctionis favor*, would make silence strong evidence of assent.

" On the other hand, if there had been no former agency, and no peculiarity in the prior relations of the parties, silence—a refusal to respond to mere impertinent interference—would be a very inconclusive but not an absolutely irrelevant circumstance. The man who will not speak when he sees his interests affected by another, must be content to let a jury interpret his silence. \* \* \* \* \* \*

" If mental assent may be inferred from circumstances, silence may indicate it as well as words or

deeds.    To say that silence is no evidence of it, is to say there can be no implied ratification of an unauthorized act—or at least to tie up the possibility of ratification to the accident of prior relations.    Neither reason nor authority justifies such a conclusion.    A man who sees what has been done in his name and for his benefit, even by an intermeddler, has the same power to ratify and confirm it that he would have to make a similar contract for himself; and if the power to ratify be conceded to him, the fact of ratification must be provable by ordinary means."

The learned judge then proceeds with some observations upon the language of Mr. Livermore above quoted, and to make a distinction between the effect of silence upon the judicial mind, or as a ratification to be implied by law, and its effect as a circumstance from which the jury may imply it.

It is not my intention to criticise the views which have been thus expressed on either side of this question, but simply to give them; and I do not do so, except to say of the language of Mr. Justice WOOD-WARD, that I think he goes too far in assuming that the principal has the same power to ratify and confirm the unauthorized act of an intermeddler that he would have to make a similar contract for himself, and this may have led the learned judge too far in his reasoning upon the other question.    It is not true as a principle of law, at least as has been held by this court, that the principal always possesses such power.    He cannot by his own mere act or assent, in whatever form, always bind the other party to the contract. *Dodge v. Hopkins*, 14 Wis. 630.

And besides the authorities above cited and those referred to in Story on Agency, the following may be examined with profit upon this question :    *Hall v. Vanness*, 49 Pa. St. 457 ; *Law v. Cross*, 1 Black, 533 ; *Hall v. Harper*, 17 Ill. 82 ; *Reese v. Medlock*, 27 Texas, 120 ; *Franklin Fire Ins. Co. v. Massey*, 33 Pa. St. 221.

But it may be said that the husband was not a stranger or volunteer within the meaning of the law on this subject, and that the marriage relation existing between the parties made it the duty of the wife to disavow the conveyance at once, and, not having done so, she will be deemed by her silence to have ratified it. We have already seen that the prior relations of the parties are important; and Judge Story says, in the section above referred to, that if there are peculiar relations of a different sort between the parties, such as that of father and son, the presumption of a ratification will become more vehement, and the duty of disavowal on the part of the principal more urgent when the facts are brought to his knowledge. And then he cites the case put by the Roman law, of a son who should borrow money in the absence of his father, as if by authority of the father, and should write to him to pay the money to the lender; and it declares that if the father does not approve of the loan, he ought immediately to make known his dissent to the lender, otherwise he will be deemed tacitly to have ratified it. The cases put by way of illustration are all where the principal or party to be charged is *sui juris*, and entirely free to act as he pleases. Such is the case of the father where a child, or of a master where a servant, has undertaken to act for him, or of a factor or partner; and such would be the case of a husband whose wife had contracted in his name without previous authority. But whether a married woman, whose husband has assumed to act without authority in her name and to dispose of her property, can be said to stand upon the same footing, is another question. In times past married women have been very much under the dominion and control of their husbands, and they are so still, notwithstanding the liberality of modern legislation in their behalf. It may be a question, therefore, whether the presumption is more vehement in such case or not, or

whether the situation of the wife, in some instances at least, ought not to be considered as modifying the severity of the rule.

But be these questions as they may, we think there is an essential element wanting in this case to the application of any rule by which the plaintiff shall be held to have ratified the conveyance or estopped from denying the agency. Assuming the law to be that the principal must immediately repudiate and give notice of his disavowal of the acts of a stranger who has officiously interposed in his affairs, and that a married woman who does not notify the other party of her dissent from an unauthorized act or contract of her husband, can claim no protection or immunity on account of her relation as wife, still we think there was no ratification or estoppel here. "No doctrine is better settled," say the court in *Owings v. Hull* (9 Peters, 629), "both on principle and authority, than this: that the ratification of an act of an agent previously unauthorized, must, in order to bind the principal, be with a full knowledge of all the material facts." See also, 2 Blackford, 119; 8 Gill & J. 250, 323; 2 Bay, 269; 2 Smedes & Marshall, 193, 199; 3 Greenleaf, 429, 432; and 6 Pick. 198, 203. It is true, that the cases are mostly where the principal was ignorant of the true nature of the contract or agreement entered into by the assumed agent; but the principle must extend as well to ignorance of any other fact, a knowledge of which is necessary to the person to be charged, in order that he may disavow and give notice thereof to the other party. The supposed principal must not only have full knowledge of all the material facts relating to the contract, but also of every fact requisite to enable him to repudiate it; or the means of knowledge must be at hand, so that he may obtain it or it shall be his fault if he does not. Such knowledge or means of knowledge is not shown to have been possessed by the plaintiff in this action. It is a

Ladd vs. Hildebrant.

controverted point in the testimony whether she knew the name of the grantee, Manchester, at all or not, or whether it was ever told to her.   She testifies that she did not—Mr. Ladd that she did.   If she was told his name, that was all she knew, and all the information her husband ever saw fit to give her with respect to the grantee.  It does not appear that she knew Mr. Manchester's post-office address, or where he resided, nor even that her husband knew.   Mr. Ladd undoubtedly knew that Manchester resided in Winnebago county, Illinois, as that was recited in the deed; but whether he knew his particular place of residence, or post-office address, does not appear.   The plaintiff resided in Winnebago county, in this state, and distant about one hundred and thirty miles, or four days' journey according to then existing modes of travel, from the residence of Mr. Manchester, and nearly the same distance from Green county, where the land was, and where only she could expect to gain any information on the subject. She was a stranger to all the persons concerned in the execution of the deed, except her husband and Mrs. West, who personated her in the transaction, or at least signed and acknowledged the deed in her name. She had only such information as her husband and Mrs. West were willing to give her.   Under these circumstances, we think it cannot be said to have been the fault or neglect of the plaintiff that Mr. Manchester was not notified of her dissent.   If not absolutely, it was practically, out of her power to give him notice. If she had known his name and post-office address, she might have written to him, but more than this could not reasonably have been required of a married woman under such circumstances.   And it does not appear that her situation was afterwards changed, or that she ever acquired or could have acquired the requisite knowledge until after her divorce from Mr. Ladd, when this suit was commenced.   The burden of showing these facts is upon the defendant, if he seeks

to estop or hold her to a ratification, and he has not shown them.

And this was the defect in the instructions asked by the defendant, and which were refused. They assumed sufficient knowledge in the plaintiff of all the facts, so that mere silence on her part amounted to a ratification, or would authorize the jury so to find, and that she so intended. But the proofs in this particular were defective, and if they had not been, it was still a matter of fact for the jury to find that the plaintiff had such knowledge, and not for the court to assume in its instructions. The instructions were therefore properly refused.

The remaining exceptions are to the refusal of the court to instruct as requested with respect to the statute of limitations, and to the order refusing to grant a new trial when applied for under the statute.

There was nothing in the evidence upon which to found the instruction with respect to the statute of limitations. The possession was vacant until the defendant entered after the conveyance to him in November, 1865. Mr. Manchester made some little preparations to build, cleared away some brush, and made some rails on the land in the summer of 1854, but never afterwards entered upon or cultivated any part of it, and it seems no one did until the defendant entered. This did not constitute possession adverse to the plaintiff, and so the instruction was inapplicable.

The new trial under the statute was refused because the defendant had waived it by stipulation. It is urged that the stipulation was invalid because made before trial, and before it was known that the defendant would want a new trial, or had the right to apply for it. This is no objection. A party may waive a future contingent right, as well as one which he presently has; and effect was properly given to the stipulation.

*By the Court.*—Judgment affirmed.