Blakeley *v.* Blakeley.

## JANE BLAKELEY

*v.*

## SIDNEY·BLAKELEY et al.

1. When no fraud is alleged, and where incapacity is the ground on which a deed is sought to be set aside, the test is, had the grantor sufficient mind to comprehend, in a reasonable manner, the nature and effect of what he was doing ?

2. A suitor who seeks to set aside a deed on the ground of incapacity, must do something more than show insanity ; he must show that the transaction he seeks to invalidate was affected by the grantor's derangement.

3. A deed made by a person of non-sane mind, before unsoundness is established by inquisition, is not void, but merely voidable, and may be confirmed in lucid intervals so as to be unimpeachable.

On final hearing on bill, answer, and proofs taken before a master.

*Mr. John A. Miller,* for complainant.

*Mr. Wm. B. Guild, jun.,* for defendants.

THE VICE-CHANCELLOR.

The complainant seeks to set aside a deed made by her mother to one of the defendants, on the ground that her mother,

NOTE.—A deed or contract made during insanity may be ratified by the grantor, if his sanity be subsequently restored (*Breckinridge* v. *Ormsby, 1 J. J. Marsh. 236 ; Allen* v. *Berryhill, 27 Iowa 534; Carrier* v. *Sears, 4 Allen 336; Bassett* v. *Brown, 105 Mass. 551 ; Taylor* v. *Patrick, 1 Bibb 168 ; Watters* v. *Barral, 2 Bush 593*); including an invalid marriage (*Cole* v. *Cole, 5 Sneed 57 ; Crump* v. *Morgan, 3 Ired. Eq. 91.* See *Johnson* v. *Johnson, 45 Mo. 595 ; Jones* v. *Jones, 36 Md. 447 ; Andrews* v. *Page, 3 Heisk. 654*) ; or waiving a right of dower (*Brown* v. *Hodgdon, 31 Me. 65 ;* but see *Pinkerton* v. *Sargent, 102 Mass. 568*) ; or a contract made during intoxication (*Eaton* v. *Perry, 29 Mo. 96 ; Blagg* v. *Hunter, 15 Ark. 246; Barrett* v. *Buxton, 2 Aik. 167 ; Arnold* v. *Hickman, 6 Munf. 15 ; Matthews* v. *Baxter, L. R. (8 Exch.) 132*) ; or one obtained by fraud (*Moxon* v. *Payne, L. R. (7 Ch.) 442 ; Montgomery* v. *Pickering, 116 Mass. 227 ; Bradley* v. *Chase, 22 Me. 511 ; Pearsoll* v. *Chapin, 44 Pa. St. 9;*

Blakeley v. Blakeley.

when she executed the deed, was insane. The deed was made by a mother to a daughter, both of whom bore the masculine name of Sidney.

The mother's mental condition is thus described in the bill: Her mind was so unsound and deranged that it was impossible for her to understand the purport and effect of a deed, and she was incapable of receiving an intelligent impression. If this is a correct description of the mother's mind when she executed the deed, there can be no doubt that it must be adjudged voidable, for the test in this class of cases, when no fraud is alleged, is, had the grantor the ability to comprehend, in a reasonable manner, the nature and effect of the act he was doing? If he had, the deed is valid; if he had not, it is voidable. It is not indispensable, in order to validate his act, that he should be entirely free from delusion or mania; he may be irrational on some subjects and yet his deed be valid. A suitor seeking to set aside a deed on the ground of insanity in the grantor, must do something more than show the mere fact of insanity; he must, in addition, show that the transaction which he challenges was affected by the grantor's derangement. Chief Justice Beasley, speaking for the court of errors and appeals, in *Lozear* v. *Shields, 8 C. E. Gr. 510,* said it was a mistake to suppose that if any phase of insanity was shown, the transaction brought in question must necessarily be held invalid. Mania does not, *per se,* vitiate a transaction, for the question in such cases is, has the transaction called in question been affected by it? Proof of a morbid turn of mind, on a subject entirely disconnected from the transaction

---

*Hanson* v. *Field, 41 Miss. 712; First Nat. Bank* v. *Gay, 63 Mo. 33*); or, by forgery (*Brook* v. *Hook, L. R.* (*6 Exch.*) *89; Wilkinson* v. *Stoney, 1 Jebb & S. 509; Ashpitel* v. *Bryan, 2 B. & S. 492; Union Bank* v. *Middlebrook, 33 Conn. 95; Howard* v. *Duncan, 3 Lans. 174; Thorn* v. *Bell, Hill & Den. 430; Greenfield Bank* v. *Crafts, 4 Allen 447; Dow* v. *Spenny, 29 Mo. 386; see Bell ads. Shields, 4 Harr. 93; Forsyth* v. *Day, 46 Me. 176; Terry* v. *Bissell, 26 Conn. 23; Walker* v. *St. Louis Bank, 5 Mo. App. 214*).

While there may be a ratification of a tort (*Cooley on Torts 127; Broom's Max. *679; see Stickney* v. *Munroe, 44 Me. 195; Perrin* v. *Claflin, 11 Mo. 13; Moore* v. *Rogers, 6 Jones 297*), *semble,* there can be none of a crime (*Morse* v. *State, 6 Conn. 9*).

brought in judgment, is absolutely irrelevant.    Substantially
the same views were expressed by the supreme court in *Eaton*
v. *Eaton, 8 Vr. 113.*

If the proofs on the part of the complainant are believed, it is
fully proved that the mother was under the influence of insane
delusions, of a very marked and decided character, about the time
she executed the deed in question.    She believed she was in
danger of being murdered by a number of different persons,
among whom were her daughter Sidney and a prominent clergy-
man of the Roman Catholic church.    So strong was this delusion
with respect to her daughter, that there were times when she
would not take food prepared by her, declaring she believed it
was poisoned.    She also accused her, unjustly, of striking her
with an iron bar, and of driving her from her own house.    It is
also proved that shortly before the deed was made, she approached
one of her grandchildren, with a knife in her hand, declaring
that she meant to kill her; that while under the influence of a
mad freak, she cut a night-dress, belonging to this grandchild, into
strips; it is also proved that she attempted to commit suicide,
by cutting her throat with a pair of scissors, and twice reported,
to one or more of her relatives, that the daughter to whom she
made the deed in question had been dead for some time.    She
seems, also, to have believed that those to whom she entrusted
the care of her money were endeavoring to defraud her.    If this
evidence stood alone, I think it would be very difficult to resist
the conviction that the grantor's mind was so thoroughly wrecked,
and her reason so completely dethroned, when she made the deed

---

There must be an affirmance or disaffirmance of the entire contract (*McGuire*
v. *Callahan, 19 Ind. 128 ; Arnold* v. *Richmond Iron Works, 1 Gray 437 ; Hun-
ter* v. *Steinbridge, 17 Ga. 243*).

What acts amount to a ratification (*Grant* v. *Thompson, 4 Conn. 203 ; Bas-
sett* v. *Brown, 105 Mass. 551; Van Deusen* v. *Sweet, 51 N. Y. 378 ; Williams*
v. *Inabet, 1 Bailey 343; Bond* v. *Bond, 7 Allen 1; Fitzpatrick* v. *Comrs., 7
Humph. 224; Ladd* v. *Hildebrant, 27 Wis. 135 ; Thacher* v. *Pray, 113 Mass.
291; Gore* v. *Gibson, 13 M. & W. 626, Pollock, C. B.; Humphreys* v. *Guillow, 13
N. H. 385 ; Reinskopf* v. *Rogge, 37 Ind. 207; Leslie* v. *Wiley, 47 N. Y. 648 ;
Kirk* v. *Glover, 5 Stew. & Port. 340 ; Dean* v. *Yates, 22 Ohio St. 388*).    See,
further, *Scanlan* v. *Cobb, 26 Am. Law Reg. 312, note.*—REP.

in question, that it was impossible for her to have had anything like a reasonable understanding or clear apprehension of the act she was engaged in, when she executed it.

But almost every witness who testifies to acts or expressions tending to show insanity, also says there were times when she was rational. They agree, with almost entire unanimity, that in all her business matters she seemed to be sane. They describe her as economical to meanness; one says of her that she was so stingy as actually to deprive herself of the necessaries of life. In all matters of business she seems to have acted with care and caution; and her business transactions, so far as they have been brought to the attention of the court, seem to have been managed with sound judgment and good sense. She obtained title to the property in controversy only a week before she made the deed now sought to be set aside. The deed to her bears date May 19th, 1877, and that to the defendant May 26th, 1877. The complainant does not deny her mother's competency to acquire property; indeed, the evidence shows that she negotiated the purchase with great shrewdness and tact. No change in her mental condition is shown to have taken place between the date of the deed to her and the date of the deed from her. If she was competent to buy, she was competent to convey. Her capacity to acquire is not disputed. The acquisition of this property by the grantor, so short a time before she made the deed in dispute, and the fact that in making the contract of purchase, she acted with shrewdness and sound judgment, are facts possessing almost decisive weight on the question of capacity. Relief should not be given in equity on a case which, in its fundamental facts, is glaringly inconsistent.

But the question of the case is, Did the grantor, when she executed this deed, comprehend, in a reasonable manner, the nature and effect of her act? The act itself, in view of the facts, was neither irrational nor unjust. She paid $1,650 for the property. She had already given the house where she lived to one of her sons. The grantee of the deed in question was her youngest daughter. She was the only one of her children who had remained with her in her old age. The others had left her, and gone

out into the world to do for themselves. This one sometimes
went to service, but when she did so, she either gave her wages
to her mother or expended them in the purchase of necessaries or
comforts for her. The mother said she was the best child she
had. This praise was fully warranted by the daughter's filial
conduct. Her love for her mother was very strong. On one
occasion, when it was suggested that her mother should be sent
to a lunatic asylum, she at once declared that her mother should
never be sent there while she could get money enough to keep
her out. She may not have been wise in her love, but there can
be no doubt about its sincerity. While the other children were
laboring to accumulate property for themselves, this daughter was
devoting her life to her mother. They were not only willing
that she should make this sacrifice for her mother's sake, but they
seemed to expect her to do it. It was, therefore, both natural
and just that the mother should feel a strong preference for this
daughter.

But the most satisfactory evidence in elucidation of the ques-
tion propounded by the case is, what the mother said in explana-
tion of her purchase, and why she had conveyed the property to
the defendant. Sixteen witnesses have repeated remarks made
by the mother upon this subject. Three of them testify that the
mother said, in March or April, 1877, she was going to buy a
property for Sidney. One of the three also says that she said Sid-
ney had worked hard; had been good to her; had waited on her,
and taken good care of her. The others testify to declarations,
extending from May, 1877, to January, 1878, showing that the
mother fully understood that she had purchased a property in
East Orange, and had afterwards conveyed it to Sidney. In
almost every instance, she gave the reason which induced her to
convey the property to her daughter. One of them narrates his
conversation with the mother in this fashion, after giving the
time as being in October, 1877:

"She asked me if I knew anything about her purchasing a property in
East Orange; I said 'Yes, you told me about it before I went away;' she
said, 'Why, I do not remember it;' I then put her in mind of what she said
in May previous; then she recollected. I then asked her what the property

Blakeley v. Blakeley.

was worth, and she told me the sum she bought it for; I can't remember the amount now. I then asked her whether she was really going to give it to Sidney, and she replied, 'Who has got a better right to it?'"

Taken together, these declarations show, first, that the mother was sensible of her obligations to her daughter; second, that she intended to reward the daughter for her sacrifices; third, that she made the purchase for the purpose of giving it to her daughter, and fourth, that the conveyance to the daughter was made to fulfill the object she had in view in making the purchase. It would be difficult, I think, in any case, to furnish more conclusive evidence that a grantor fully understood and appreciated what he was doing, when he made a deed, by proof of his declarations and statements, than is presented by the evidence in this case.

This case differs, in an important particular, from ordinary cases. Ordinarily, where mental incapacity is set up to avoid a deed, the grantor conveys something which he has owned for a considerable period of time. But here, the grantor obtained title to the thing conveyed very shortly before conveying it, and for the purpose of making it over, by way of gift, to her child. And this case is marked by this further peculiarity: those who challenge the capacity of the person whose act they bring in question, do not seek to avoid that part of her act by which she obtained title, but merely that part of her act by which she divested herself of title. So that they place themselves in this incongruous position: she was sane enough to negotiate a purchase, and had sufficient understanding to accept a title, but she was not sane enough to dispose of her property to reward a child who had given her the best years of its life.

Though the deed in question was signed and acknowledged May 26th, 1877, it was not fully executed by delivery until November 12th, 1877. It is not proved that even then there was an actual delivery. The person who had possession of it up to that date says that he gave it then either to the daughter or the mother, but he does not distinctly remember which. But for another piece of evidence, it might be doubted whether the proof of delivery was sufficient to pass title. But it is proved by an insurance agent that on the 14th of November, 1877, the mother

applied to him for a policy on this property, and that she gave him a description of the house, its location, stated the amount of insurance desired, and instructed him to issue the policy in the name of Sidney Blakeley, jun., as owner. This fact I regard as one of great weight, aside from its importance on the question of delivery. It was not only the act of an apparently sane mind, but of a provident, cautious and thoughtful person.

The evidence, I think, fully demonstrates that the mother, both when she signed and acknowledged the deed in question and when she executed it by delivery, fully and clearly comprehended what she was doing, and, in my judgment, her acts, in those respects, were not only rational, but eminently just.

Another topic should be adverted to. A deed by a person of non-sane mind, made before the fact of insanity is found by inquisition, is not void, but merely voidable. If lucid intervals occur, after the deed is made, and in such intervals the grantor confirms and ratifies the deed, it thereby becomes unimpeachable. *Allis* v. *Billings, 6 Met. 415; Arnold* v. *Richmond Iron Works, 1 Gray 434; Gibson* v. *Loper, 6 Gray 279; Wart* v. *Maxwell, 5 Pick. 27.* In *Allis* v. *Billings,* the court say :

"A voidable deed is capable of confirmation, and if a grantor, when insane, makes a deed, and should afterwards, in a lucid interval, well understanding the nature of the instrument. ratify and adopt it as his deed, as by receiving the purchase-money due under it, this would give effect to it, and render it valid in the hands of the grantee."

As already remarked, nearly all of the witnesses who testify to acts or expressions indicative of insanity, also give evidence showing clearly that Mrs. Blakeley's fits of insanity were but of temporary duration, and were always succeeded by lucid intervals. There is scarcely a witness who has spoken upon the main point in contest, but has given evidence showing more or less clearly that there were times when she was entirely rational. Her conduct and speech remove all doubt upon this point. Her conversations about the time the deed was made; her declarations showing why she intended to buy this property, and her subsequent declarations showing what she had done with it; her fre-

quent acknowledgment of her obligations to her daughter, and her statement of the considerations which influenced her in making the property over to her daughter, demonstrate not only that her mind was free from mania or delusion at those times, but that she fully understood what she had done, and meant to stand by her act. There is no evidence proving directly that, at the particular time when this deed was executed, she did or said anything indicating that she was not in the full enjoyment of her reason; on the contrary, the evidence shows she was. But if it had been shown that she was actually insane at that time, still, I think, the evidence of ratification, when her mind was lucid and she was free from delusion, is so strong and full that the court would be bound to declare that any infirmity which had existed originally had been removed by confirmation.

One other fact should be noticed. The defendant was one of the persons whom the mother believed had designs upon her life. While this delusion lasted, it is certain, I think, that the mother would bestow nothing upon the daughter that she was at liberty to withhold. No one pretends that the mother ever said, when justifying or explaining her gift, that she made it to appease the imaginary hatred of her daughter, or to purchase immunity from the evil she thought her daughter intended to do to her. The fact that she was at times subject to this delusion respecting her daughter, furnishes very cogent evidence that she was free from its influence at the time this deed was made.

I think the complainant's case fails at all points, and that her bill should be dismissed, with costs.