PERKINS VS. SIMONDS.

DESCENT OF ESTATES:  *Kindred of the half blood.—Descent of the share of deceased minor, unmarried child; statutes of 1839.*

1. The provision of sec. 4, ch. 92, R. S. 1858, that where an inheritance came to an intestate by descent, devise or gift from an ancestor, kindred of the half blood, who are not of the blood of such ancestor, shall be excluded from the inheritance, applies in *all* cases falling within its terms, and is *not* limited to cases in which the intestate does not leave issue, or a widow, father, mother, brother or sister.

2. Under the Terr. Stat. 1839 (§§ 38, 39, pp. 184, 185), which declare that where a child of an intestate died before arriving at the age of twenty-one and unmarried, " such deceased child's share " should " descend equally among the surviving brothers and sisters," etc., the portion of the estate so described must be regarded as descending to such surviving brothers and sisters *from the father*, and not from the deceased child.

APPEAL from the Circuit Court for *Waukesha* County.

Ejectment, for an undivided half of certain lands.  The grounds upon which the parties severally claimed title, are fully stated in the opinion.  The defendant appealed from a judgment in plaintiff's favor.

*Palmer, Hooker & Pitkin,* for appellant, argued that the first five subdivisions of section 1, ch. 92, R. S., regulate the descent of the real estate of the intestate to his issue, widow, father, mother, brother and sister, and prescribe the circumstances under which the estate shall go to them respectively.  The language used in the first part of this section embraces all the real estate of which the intestate died seized, whether it came to him by purchase or inheritance.  And the different persons named in the several subdivisions are designated as the persons to receive the estate, regardless of the question whether they are of the half blood or the whole blood.  Sisters of the half blood are " sisters " within the meaning of the statute. . *Perry v. Logan,* 5 Rich. Eq., 202 ; *Clark v. Sprague,* 5 Blackf., 412 ; *Gardner v. Collins,* 3 Mason, 398 ; 4 Kent's Comm., 403 and

notes. 2. The sixth subdivision provides for cases where none of the persons named in the preceding subdivisions survive the intestate. In that event the estate goes to the "*next of kin* in equal degree," etc. Philo John Prescott having left no issue, nor father, nor mother, nor widow, but having left two sisters, this subdivision does not regulate or direct the descent of his estate, but it is regulated wholly by the fourth subdivision. *Hatch v. Hatch*, 21 Vt., 450. 3. Section 4 is applicable only when the descent is to the "next of kin," and qualifies only the sixth subdivision, and not any of those subdivisions which provide what particular person shall inherit, regardless of the degrees of kindred. [The argument of counsel, to show that the provisions of section 4 are inapplicable to the first five subdivisions of section 1, and if applied to them would produce results inconsistent with the law of descent established by that section, was minute and elaborate, and is incapable of material abbreviation.] 4. Counsel argued that under sec. 39, p. 185, statutes of 1839, one-half of the estate of Philo John Prescott descended *immediately* from his brother David, and that it is *immediate* descent to which courts look. *Gardner v. Collins*, 2 Peters, 58; *Prickett v. Parker*, 3 Ohio St., 394; *Hyatt v. Pugslee*, 33 Barb., 373; *Stewart's Lessee v. Jones*, 8 Gill & J., 1; *Beebee v. Griffing*, 14 N. Y., 235.

*Levi Hubbell*, for respondent, argued from the language of the statute of 1839, that when David Prescott died "under the age of twenty-one years and unmarried," the surviving brother did not inherit the property as *his* heir, but as the heir of their father; and in support of this construction he cited *Sheffield v. Lovering*, 12 Mass., 491; *Nash v. Cutler*, 16 Pick., 491; *M'Afee v. Gilmore*, 4 N. H., 395; *Crowell v. Clough*, 3 Foster, 209, 211; *Prescott v. Carr*, 9 id., 453.

LYON, J. In the year 1843, John Prescott died intestate, leaving surviving him his widow and their two minor sons, David and Philo John. At the time of his death he was seized

in fee of the land which is in controversy in this action. David died in 1845, being unmarried and under twenty-one years of age; and in 1847, the widow of John Prescott intermarried with Reuben G. Sawyer, by whom she had two daughters, both of whom are living. Mrs. Sawyer died intestate in 1857, and in 1863, Philo John, who was never married, also died intestate. No conveyance of such land was made, or attempted to be made from the time John Prescott died until after the death of his son Philo John. John Prescott had five brothers and one sister, all of whom either survived him and his son Philo John, or left children who survived them.

After the death of Philo John, the plaintiff acquired the right, title and interest of the sister and of the heirs of two deceased brothers of John Prescott in and to such land; and the defendant acquired the right, title and interest of the daughters of Reuben G. Sawyer and his wife, the widow of John Prescott, in and to the same land, and was in possession thereof when this action was commenced; and the action was brought by the plaintiff to recover possession of an undivided half thereof.

Upon these facts the circuit court rendered judgment for the plaintiff for the possession of an undivided half of such land, and from that judgment the defendant has appealed to this court.

The question to be determined is, whether, upon the death of Philo John Prescott, the land descended to his next of kin, to the exclusion of his sisters of the half blood, or whether it descended to such sisters of the half blood.

The Revised Statutes of 1858, chap. 92, sec. 4, provide that "kindred of the half blood shall inherit equally with those of the whole blood, in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

It is claimed by the counsel for the appellant that this provision is not applicable in a case where the intestate leaves

issue, or a widow, father, mother, brother or sister, but only where he leaves no such relative, and where his estate goes to his " next of kin," pursuant to the provisions of subdivision six of section one of said chap. 92; and that inasmuch as Philo John Prescott did leave sisters, although of the half blood, they are not within the exception contained in section 4. This position is not sustained by authority, and the argument fails to convince us that the statute admits of the construction contended for. The words of the section are general : " Those who are not of the blood of the ancestor shall be excluded from such inheritance." If this estate came to the intestate by descent from John Prescott, upon what principle can we say that it shall descend to the sisters of the half blood, who are not of the blood of John Prescott?

Besides, it seems to me that the legislature would naturally be more solicitous to preserve the estate of the ancestor in the hands of his near kindred, such as children, father or mother, than it would be where there is a failure of such kindred, and the estate necessarily goes to more distant and collateral branches of his family.

I conclude, therefore, that if the land in controversy came to Philo John Prescott 'by descent from his father, it did not descend to the sisters of the half blood on the death of Philo John, but to the brother and sister of John Prescott who were living at that time, and to the children of his brothers who had deceased before that time, by right of representation.

That an undivided one half of the land did descend to Philo John from his father, seem too clear for argument. The only room for controversy is in respect to the other half thereof, which did not vest in him until the death of his brother David Prescott, in 1845. The question to be settled here is, whether he took such last mentioned half by descent from his brother or from his father. If from his brother, then the brother and not the father is the ancestor, and the sisters of the half blood, being of the blood of such ancestor, will inherit that half of the

estate by virtue of section 4, above quoted. But, as we have already seen, if Philo John took that half of the estate by descent from his father, the sisters cannot inherit the same.

When John Prescott and his son David died, the revised statutes of 1839 were in force, and it becomes necessary to refer to the provisions of law therein contained on the subject of the descent of real estate, before we can correctly answer the question under consideration. Section 38 of the act on this subject (p. 184) provides as follows: "When any person shall die seized of lands, tenements or hereditaments not by him devised, the same shall descend in equal shares to and among his children, and such as legally represent them (if any of them be dead), and in every case where children shall inherit by representation, it shall be in equal shares;" and section 39 (p. 185) provides, that "when any of the children of the intestate die before his arrival at the age of twenty-one years, and unmarried, such deceased child's share shall descend equally among the surviving brothers and sisters, and such as legally represent them."

These provisions were borrowed from the laws of Massachusetts, and before they were enacted here, received judicial construction in that state. *Sheffield v. Lovering*, 12 Mass., 505, decided in 1815; and *Nash v. Cutler*, 16 Pick., 491, decided in 1835. As applied to the facts in this case, the principle established by those decisions is, that the purpose of both sections of the statutes of 1839, above mentioned (sections 38 and 39), is to regulate the descent of intestate estate. Section 39 does not make a rule for a separate and distinct case, but only modifies one of the rules of descent under given circumstances. It is an exception to the general rule contained in section 38. "The whole purpose is the descent of intestate estate, and we think the effect is, that where, upon the descent of an estate to children, one of them shall happen to die in infancy, that is, at any time before arriving at the age at which, by law, he has the power of disposing of his estate, and

before he has by marriage contracted obligations and established new connections which change his relative situation to others, his share of the inheritance, that is, his portion of the intestate estate, for the descent of which this statute is now providing, shall go just in the same manner as if such child had died in the lifetime of the ancestor, or, in other words, to those who would have taken the same share if such child had not existed. It directs that it shall go to the other children of the parent from whom it came, which it would have done had the child so dying not been in existence at the time of the decase of such parent. It is rather giving a new destination to that portion of the parent's estate which has in some measure failed to accomplish the design of the legislature by the premature death of such child, than to provide a new and distinct rule of distribution for such child's own estate." *Nash v. Cutler, supra,* p. 499. This case followed that of *Sheffield v. Lovering,* where the same principle was asserted. In New Hampshire there is a similar statute, and the doctrine of these Massachusetts cases has been adopted in that state. *McAfee v. Gilmore,* 4 N. H., 391; *Crowell v. Clough,* 3 Foster, 207; *Prescott v. Carr,* 9 id., 453. We are not at liberty to disregard the authority of these cases, and they settle the law to be, that on the death of David Prescott, under age and unmarried, Philo John took the undivided half of the land in controversy, which had not previously descended to him, not as a portion of the estate of his deceased brother, but as a portion of the estate of his deceased father, John Prescott. In other words, the inheritance came to Philo John by descent from his father, and not by descent from his brother.

It follows that the sisters of Philo John, of the half blood, under whom the defendant claims title to the land described in the complaint, are excluded from the inheritance thereof as heirs of Philo John, and the land descended to the living brother and sister and to the children of the deceased brothers of John Prescott.

The plaintiff, having obtained title to an undivided half of such lands from the latter sources, is entitled to recover the same.

The judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.